## TINKLER v. POWELL. ·

(No. 801; Decided October 5th, 1915; 151 Pac. 1097.)

·Accounting—Trade Union Treasurer's Accounts—Authorized Disbursements—Bank Account—Lost Records—Disbursements Defined—Sufficiency of Evidence.

1.  The issuance of a check by a treasurer of a labor union for a certificate of deposit in a like amount, being a mere changing of the form of deposit of funds held by him in his official capacity, is not a "disbursement" for which he is entitled to credit in an accounting with his successor in office.

2. In an action by a local union of the United Mine Workers of America against the local's treasurer to recover moneys alleged to have been unaccounted for, where the evidence shows that all money received by the defendant excepting the amount turned over to his successor, was actually paid out on checks countersigned by a trustee and authenticated by the seal of the local union, upon orders signed by the financial secretary and the president, the fact that such orders were destroyed by auditing committees and not returned to him, will not deprive him of the right to show by other competent evidence that he had properly paid out the money, and when that fact is shown, even if the treasurer's books be incomplete, a verdict for defendant will not be disturbed.

ERROR to the District Court, Sweetwater County; HON. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*E. D. MacDougall,* for plaintiffs in error.

The evidence is insufficient to support the verdict. To arrive at a general finding for defendant it was necessary to find that defendant disbursed upon written orders $3,388.50 of seriously disputed disbursements, which is contrary to the evidence. The treasurer's books were not audited. There is nothing to indicate an audit, except the signing of the three names of the committee without recommendations, approval or disapproval. This is an action for an accounting. In view of the incomplete condition of defendant's books, instruction number four has no support in the evidence and seems to pronounce as law an ambiguous and inapplicable generality; instruction number five is erroneous in that it virtually directs a finding against the plaintiffs. $15,828.54 of checks were authorized to be issued. The evidence shows the issuance of checks $3,388.50 in excess of that sum. This is an action *ex contractu.* A plaintiff may waive a tort and sue in *assumpsit.* (4 Cyc. 331, 332; Vance v. Mottley, 92 Tenn. 310; 21 S. W. 593.) When a question arises between a trustee and a beneficiary, the trustee assumes the burden of proof. (Jones on Evi-

dence, Sec. 190.)    Instruction number 6 is erroneous, as it indicates that the action was one against the bank, where the account was carried.    Requested instructions numbered eight and nine should have been given by the trial court. It is admitted that defendant received $23,789.49 of plaintiffs' funds in addition to $2,000.00 in certificates of deposit. It is also admitted that defendant disbursed $15,828.54 and has accounted to the plaintiff for the additional sum of $7,040.95 less $477.50 of his checks cashed after his withdrawal from office, leaving a balance of $3,388.50 in cash unaccounted for.    Defendant failed to show authority for the issuance of checks covering the excess.    The verdict being unsupported should be set aside.

*N. R. Greenfield,* for defendant in error.

While the proceedings of plaintiffs in error are defective, we are content to have the matter disposed of on its merits.    The argument set forth in plaintiffs' brief consists very largely of questions, which we do not feel called upon to answer.    The authorities cited are not pertinent to the questions involved in the case, if indeed it can be said that any questions are involved in the entire proceeding.    Considering what is admitted by the pleadings there remains but $2,911.00 in dispute.    The books, accounts and conduct of defendant, as treasurer of the union, were fully approved by auditing committees of the union.    All checks issued by defendant were drawn in accordance with instructions issued to the bank by the union.    The receipts and disbursements as shown by the evidence show an exact balance.    The time certificate of deposit of $2,000.00 was received by defendant when he assumed office and by him surrendered to his successor.    The case was apparently prosecuted through malice.    It was brought without previous investigation.    The instructions given by the court were not erroneous.    The instructions refused by the court placed the burden of proof upon defendant and hence were properly refused.    The judgment of the lower court should

be affirmed and plaintiffs should be required to pay the costs of this proceeding.

*E. D. MacDougall,* in reply.

Under disbursements counsel has included $2,000.00 of certificates of deposit surrendered to defendant's successor in office. Defendant surrendered $5,000.00 of such certificates to his successor, of which the bank charged $3,000.00 with which certificates were purchased against the union, as disbursements, and the union gave defendant credit for the whole $5,000.00 of time certificates at the time of his withdrawal from office. This is a double charge of the $3,000.00 against the union. Funds left in the bank by defendant at the time of his withdrawal from office do not represent the situation or the real credit to which defendant was entitled for disbursements, in view of the fact that there were outstanding checks issued by defendant aggregating $477.50, a point ignored by counsel for defendant.

POTTER, CHIEF JUSTICE.

This action was brought by Robert Tinkler, as the presiding officer, officially known as president of Local Union No. 2616, The United Mine Workers of America, and for the benefit of the said local union, an unincorporated association of mine workers, located in the Town of Superior, in Sweetwater County, in this state, to recover from the defendant, William H. Powell, as a former treasurer of said local union, the sum of $5,654.25, with interest, alleged to be due for money received by him as such treasurer and which, it is alleged, he had failed and refused to pay over to his successor in office or to the said local union. There was a jury trial in the district court resulting in a verdict and judgment in favor of the defendant, and the plaintiff brings error.

The only question to be considered is whether the evidence is sufficient to sustain the verdict, for no other error is properly alleged or assigned in the motion for new trial

or petition in error. By plaintiff's admissions on the trial as to the amount received by the defendant as treasurer and the amount turned over to his successor in office, the sum claimed was reduced to $3,388.50. It is admitted by the pleadings that the defendant held the office aforesaid from January 1, 1911, until July 2, 1912, and that he received from his predecessor in office the sum of $5,408.28, but the answer alleges as to the sum so received that $3,408.28 was subject to the payment of outstanding checks issued by his predecessor in office, and that there were turned over to him, time certificates of deposit in different banks in the sum and of the value of $2,000. And it was established by the evidence that he received from his predecessor in office two time certificates of deposit for $1,000 each, and that the said sum of $3,408.28 was on deposit in open account in a bank at Superior subject to check under the rules of the union and its instructions to the bank, which account we understand from the testimony was kept in the name of the said local union. It is alleged in the petition that the other receipts of money by the defendant as treasurer amounted to $21,381.21, but the answer alleges that such additional receipts amounted only to the sum of $20,381.21. and on the trial that averment of the answer was admitted by the plaintiff. Hence upon the trial the total amount of money received by the defendant was admitted to be $25,789.49, including $2,000 represented by time certificates of deposit. It is alleged in the petition that when the defendant retired from the office he turned over to his successor moneys of the local union amounting to $5,306.70, but the answer alleges that defendant delivered to his successor the sum of $7,049.95, consisting of certificates of deposit in the amount and of the value of $5,000 and cash in banks in open account and subject to check amounting to $2,049.95, and on the trial that part of the answer was admitted, and the fact was also established by the evidence. These admissions left as the only matter in dispute the amount of the defendant's disbursements for which he was entitled to credit.

The petition alleges that it was defendant's duty as treasurer aforesaid to receive and safely keep all moneys belonging to the local union, and to pay out and disburse the same upon written order of the local union executed by the financial secretary, and to turn over to the union or his successor in office all of said moneys not so paid out; and that he paid out and disbursed, upon written orders aforesaid, only the sum of $15,828.54. The answer alleges that the defendant faithfully and honestly performed all of his duties, that he safely kept and accounted for all moneys received by him belonging to the local union, and only disbursed the same upon written order of the proper officers, and paid over to his successor all moneys received by him and not so disbursed, and, specifically, that he disbursed and caused to be paid out upon proper written orders the sum of $21,739.54, three thousand dollars of which sum was expended for three time certificates of deposit in various banks for the sum of $1,000 each, which said certificates of deposit, together with $2,000 in time certificates of deposit received from his predecessor in office, were turned over by him to his successor in office on July 2, 1912. The legal effect of this averment of the answer is that the defendant actually disbursed or caused to be paid out upon proper written orders the sum of $18,739.54. The mere changing of the form of the deposit of $3,000 of the amount received would not constitute a disbursement, and could not be regarded as such, without the treasurer again being chargeable with the amount as so much money received, for he retained the same, although in the form of certificates of deposit, until the certificates were delivered to his successor in office, when he became entitled to credit for the amount. And he was allowed such credit upon the trial by the plaintiff's admission that the defendant had delivered the certificates to his successor in office and that they were worth their face value.

The difference between the amount of actual disbursements as alleged in the petition and answer respectively is $2,911. This amount the plaintiff claims to be due from

the defendant, together with $477.50, the aggregate amount of certain checks issued by him as treasurer and paid after he had retired from the office out of the money of the union in banks on general deposit. This amount was included in the sum of $15,824.54 alleged in the petition as the total amount of defendant's proper disbursements. The plaintiff's claim that the defendant is only entitled to be credited with that amount for disbursements is based upon the fact that that is the total amount of orders and disbursements entered in the treasurer's cash book in use during the time the defendant held the office, and kept by him, and in which he was supposed to enter in a space provided therefor the money received from the financial secretary, and in other spaces, upon paying out money, the date, number of order, and to whom paid, together with the amount. But it was shown by the testimony of the cashiers respectively of the two banks in which the moneys of the union were kept on general deposit that all the money, excepting the sum remaining on hand at the end of defendant's term and turned over to his successor, had been paid out upon checks signed by the treasurer and otherwise authenticated as required by the rules and instructions of the union. Thus the bank accounts referred to by this testimony disclosed that the sum of $21,739.54 had been paid out on check. But this amount was shown to include $3,000 drawn out to be placed in time certificates of deposit, leaving as the amount of actual disbursements the sum of $18,739.54, as alleged in the answer.

While unable to explain the disbursements not entered in his cash book, or the failure to enter them, the defendant testified positively that he did not sign any check or pay out any money except upon an order signed by the financial secretary and the president, as provided and required by the by-laws. He was unable to produce his cancelled checks or the orders upon which they had been issued for the reason, as he testified, that they had been delivered by him from time to time to the committee appointed to audit his accounts, none of which had been returned to him, and

he did not know what had become of them; and he denied having destroyed any of them. But one witness who, upon at least two occasions, had been a member of the auditing committee during defendant's term of office, testified that he, as a member of the committee, had destroyed the checks and vouchers delivered to the committee by the defendant, believing them to be of no further use, the defendant's accounts having been audited by the committee and approved by the union; and that he understood it to be the custom to destroy the vouchers after such audit and approval. He also testified that in auditing the treasurer's account the committee examined the financial secretary's book and the vouchers, meaning by the vouchers, as he explained, the treasurer's checks, that being all that was necessary. And it appears from the evidence that bills allowed by the local union or ordered to be paid, were entered in the financial secretary's book, as well as the receipts. Although the defendant was unable to give a definite explanation of any disbursement not shown upon his book, he testified that on one occasion he was authorized by an order properly signed to give a check for an amount which he did not recall to be used by the union as guarantee for a special train to the neighboring city of Rock Springs, which was not entered in his book, and he thought something like that occurred at one or two other times while he was treasurer; and that the books of the bank were probably more accurately kept and more liable to be correct, as he was not a bookkeeper. And it may here be said that the defendant's book not only failed to show some of the disbursements appearing by the bank books, but also some of the items of money shown by the books of the bank and admitted to have been received, amounting to over $1,600. This difference the defendant was also unable to explain, except on the theory that the bank's books were more accurately kept than his own.

The union by-laws which were introduced in evidence required the treasurer to keep a regular and correct account of all moneys received and held by him, and to deposit all moneys belonging to the union in some bank or other in-

stitution designated by the union. And the evidence shows that the defendant did deposit all the moneys received by him in the designated banks, and the amount so deposited, together with the admitted amount aforesaid that he received from his predecessor in office, make up the amount of the admitted receipts of the office during the defendant's term. The by-laws also required the financial secretary to receive all initiation fees, dues, fines and assessments and pay the same to the treasurer, taking his receipt therefor; to furnish the treasurer with copies of all resolutions authorizing drafts on him with the signature of the president attached to them; that the president sign all orders drawn on the treasurer by the financial secretary, in compliance with a vote of a majority of all the members present at any stated meeting; and that the treasurer pay all orders drawn on him by the financial secretary and signed by the president. In addition to these by-law provisions, it is shown to have been a rule or requirement of the union that all checks issued by the treasurer should be also signed by at least one of the trustees and have the seal of the union stamped or impressed thereon; the recording secretary, the evidence discloses, being the custodian of the seal. The banks where the union money was kept were instructed as to this rule, and the respective cashiers of the banks in which the moneys of the union were kept on general deposit during the term of the defendant as treasurer testified that said instructions were complied with, which is not disputed except that it appears in the case of two checks for small amounts issued by defendant and paid after the expiration of his term they did not show the union seal; no question, however, was raised as to the propriety of the issuance or payment of those checks, but on the contrary it was admitted that they were issued upon proper orders and for a proper claim against the union. The checks referred to as having been paid after the defendant vacated the office are the only checks introduced in evidence, and from them it appears that a printed form of check was used, upon the upper left hand corner of which was the name and number

of the local union, viz.: "Local Union No. 2616, United Mine Workers of America, District No. 22," and in the lower right hand corner the word "Treasurer," underneath it the word "Trustee," leaving a space at the left for the signature of the treasurer and trustee, respectively, and above these the name and number of the union as follows: "Local Union No. 2616, U. M. W. of A."; the remainder of the body of the check being in the ordinary form of a bank check.

The testimony of the defendant, which is undisputed, shows the method of paying claims against the union to have been substantially as follows: At each meeting, and in the room where the meeting was held, the financial secretary drew orders for the payment of claims which had been allowed at the meeting or for money ordered to be paid, which being signed by him and the president were handed to the treasurer, who then drew checks for the respective amounts payable to the proper parties, respectively, and after the signing the same laid them upon the trustees' table to be signed by one of them. The checks when so signed by the treasurer and a trustee and containing an impression of the seal of the union were ready for delivery, and in proper form to be paid on presentation at the bank. It does not appear whether it was the custom to have the seal impressed upon the checks before or after they were signed by the treasurer and a trustee. It does appear that the recording secretary, who was custodian of the seal, was required by the by-laws to act as assistant financial secretary, and we understand from the evidence that it was customary for him in that capacity to draw and sign the orders upon the treasurer..

Although the checks issued by the defendant as treasurer had been either lost or destroyed, with the exception of the few that were paid after he retired from the office, so that they could not be produced, and the orders drawn upon him for the payment of money were also missing, there was no showing to justify the conclusion that any of these papers had been destroyed for the purpose of suppressing the evi-

dence of the transactions. On the contrary, we think the natural and proper inference from the evidence is that the loss or destruction of the papers occurred as a result of the rather loose method of keeping the books and records by men not trained in such matters, and who did not realize the importance of preserving vouchers and other papers relating to past financial transactions, but supposed that it was not necessary after the accounts had been audited and approved. The plaintiff testified that he had made a search for the vouchers or warrants in the drawers of the local desk, and all that he was able to find covering the period of defendant's service as treasurer were the stubs in a few used order books containing memoranda of orders upon the treasurer issued during part of the time; that he had compared the stubs found with the treasurer's book and found that all the orders shown by the stubs had been entered upon the book; but that none of the stubs covered the period from January 1, 1911, to March 23, 1911, or from January 6, 1912, to July 2, 1912, the end of defendant's term of office.

However, it appears that the book of the financial secretary presumably covering the entire period in question was in court at the time of the trial. On plaintiff's cross-examination he testified that such book had not been brought into court, for the reason that he had been instructed that it would not be necessary, and that, although the one who served as financial secretary while defendant was treasurer was then at Superior in the county where the trial occurred, he had not been subpoenaed as a witness or to produce the book at the trial. But on re-direct examination his attention was called to that book, it being then shown to him for that purpose by his counsel, and he was asked to examine three pages showing entries of bills against the union allowed January 12, 1911, and to state how they compared with the entries of that date in the treasurer's book, and he stated that the entries of that date in the book agreed with the entries in the treasurer's book. But he was not further examined as to the book, nor was it offered in evidence, al-

though an objection to any reference to the book by the witness at that time on the ground that it was improper on re-direct examination, and that the witness had denied that the book was in court, was overruled, the court saying: "If we can get anything out of it we want it," as the treasurer's book does not seem to cover everything. When the objection aforesaid was interposed, the witness explained that he did not know the book was present in court when he was being cross-examined.

As there was no further reference to the book of the financial secretary than that above stated, it does not appear whether it contained any entry of disbursements not shown upon the treasurer's book. But the books kept by the two banks respectively showing the account with the union were in court, and from the testimony of the cashiers it appears that such books contained entries showing the amount of each check which had been paid and the date of such payment, and it was shown that as to several of the items shown on the bank books as having been paid out on check there was no corresponding entry in the treasurer's book. But there was no attempt to show that any such check was improperly issued or that the amount thereof had not been regularly allowed by the local union or ordered to be paid in the manner required by its by-laws; and these items included among others one check for $800, one for $200, one for $80, two for $60 each, one for $30, and another for $40. Of course the court cannot say or know whether it was possible for the plaintiff or his counsel to have ascertained the facts with reference to any of these disbursements. But, except that no entries appeared in the treasurer's books showing these payments, there is nothing to show that the money was improperly disbursed. On the contrary, it appears from testimony admitted without objection and undisputed that on several occasions during his term and when he retired from the office his accounts were audited by a committee and approved by the local union. And the fact that his accounts were so audited appears also from entries in his book made and signed by an auditing committee; such

entries containing nothing to indicate a disapproval of the account, but usually showing the financial condition of the association by stating the amount on hand at the date of the last audit, the total amount respectively of the receipts and disbursements since that date, and the balance on hand, and, in some instances, a reference to investments.

Upon the facts above stated we think it clear that there is no ground for a reversal of the judgment entered upon the verdict in favor of the defendant. Assuming that it was incumbent upon the plaintiff only to show the amount of money received by the defendant, the amount shown by his book to have been disbursed, and the amount turned over by him to his successor, and that, to entitle the defendant to credit for any other or further disbursements, the burden was then upon him to show that the money was properly paid out, we think the evidence introduced on his behalf sufficient for that purpose. The mere fact that he failed to enter a disbursement in his book, though it was his duty to do so, would not render him liable for the amount, nor is it to be taken as necessarily or conclusively showing that the disbursement was not a proper one. If the defendant had been able to produce and had produced orders signed by the financial secretary and president for all the money actually paid out by him, his right to credit therefor would not be open to further question, although he may not have entered the disbursements in the treasurer's book. The fact that all his orders were lost or destroyed after he had delivered them to the auditing committee, and without being returned to him, did not deprive him of the right to show by other competent evidence that he had properly paid out the money. And though the evidence introduced for that purpose may be less satisfactory than the original papers would have been, we think it must be held sufficient to sustain the verdict. It was shown that all the money received by the defendant, excepting the amount turned over to his successor, was actually paid out on checks signed not only by himself, but also by a trustee and authenticated by the seal of the local union.

And we think the jury might properly assume, as they no doubt did, in the absence of any evidence to the contrary, that the checks would not have been so signed and authenticated except upon proper orders authorizing it, in view of the other evidence to the effect that the defendant's accounts had been approved by the association, and his testimony that he had not drawn or issued any check except upon an order therefor signed by the financial secretary and the president; that testimony standing undisputed, unless it might be regarded as contradicted by the fact that some of the disbursements were not entered in the treasurer's cash book. It is evident that the jury must have considered the defendant's testimony in that particular sufficiently corroborated to overcome the effect of the absence of any entry in the book of the disbursements in question.

We think the verdict is to be understood as showing that the jury found the defendant to be entitled to credit for the money actually paid out during his term of office as shown by the bank accounts, in addition to the amount admitted to have been turned over to his successor. The fact that some checks issued by him were not paid until after he had retired from the office is therefore immaterial, for those checks were not included in the respective bank accounts considered by the jury; such accounts including only money paid out during defendant's term of office. But it may be said that the defendant testified that several checks of his predecessor were paid after he became treasurer out of the money in bank turned over to him, amounting in the aggregate, to the best of his recollection, to about $500, an amount more than equal to the amount of his checks above referred to, and sought to be charged against him; and nothing was offered to contradict his testimony in that respect. The judgment will be affirmed.

BEARD, J., and SCOTT, J., concur.        *Affirmed.*